JOHN J. MOORE and others, Executors, etc., of HENRY BARCLAY, Deceased, Respondents, *v.* JAMES E. SHAW, Impleaded with others, Appellant.

*Referee's report of deficiency on sale — when it is unnecessary to have it confirmed.*

*Semble,* that, where a judgment in an action to foreclose a mortgage provides "that if the proceeds of sale be insufficient to pay the amount so reported to be due to the plaintiff, the said referee specify the amount of such deficiency in his report of sale, and that the defendant pay the same to the plaintiff," it is unnecessary to apply to the court for an order confirming the report of the referee, before issuing execution against the defendant for the amount of the deficiency, nor is it necessary to enter any further judgment upon the filing of the said report.

*Semble,* that it may be necessary to have the report confirmed, in order to perfect the title, as between the mortgagor and purchaser.

Appeal from an order denying a motion to set aside as irregular a judgment for deficiency, upon a sale of the mortgaged premises sold under the decree in this action: no order confirming the report of sale having been made.

*Aaron Pennington Whitehead*, for the respondents.

*John C. Shaw*, for the appellant.

Potter, J.:

This is an appeal from an order denying a motion to set aside a judgment for deficiency, upon a sale in the foreclosure of a mortgage, for irregularity. The irregularities specified in the notice of motion are, that no order was entered to confirm the referee's

report of sale, no notice of filing same was served on defendant's attorney, and that said judgment was entered within eight days after date of filing the report. The decree and the sale under it are regular, and there is no allegation of error in the amount of said judgment for deficiency. The irregularities are purely technical, and relate only to the time and manner of doing those things which are required to be done, and which are conceded to have been correctly done.

It is contended that the report of sale should have been confirmed. That was doubtless the practice formerly in chancery, under section 152, article 6, title 2 chapter 1, part 3 of the Revised Statutes. (2 R. S., 191, § 152.) But that practice was the result of a rule of chancery practice, and not of any requirement of the statutes referred to. The statute simply provided, that upon the coming in of the report of sale, the court shall also have power to decree and direct the payment of the deficiency by the mortgagor, etc.

The language and the theory of that statute were, that upon the coming in of the report, the court were to make an additional or further decree for the payment of the deficiency. The report of sale showing a deficiency and its amount, formed the only basis of this further decree, and prove the propriety, if not necessity, of the chancery rule for a consideration, if not for a confirmation of the referee's report of sale. But the Legislature of 1863 adopted a different provision upon this subject by the amendment of section 167 of the Code, one more in consonance with the changed organization of the court in the administration of law and equity in the same court. That amendment provides, that in actions to foreclose mortgages, the court shall have power to adjudge and direct the payment of any residue of the mortgage debt, that may remain unsatisfied after a sale of the mortgaged premises, not only as against the mortgagor, according to the Revised Statutes (supra), but also against any other person liable for the debt. Thus the equitable action to foreclose a mortgage, by virtue of these statutes, becomes also a legal action to recover payment of the debt out of property other than the mortgaged property.

The nature and form of the judgment were changed and adapted

to this new condition of law, and the judgment of foreclosure was made to contain both a degree of foreclosure and an ordinary money-judgment for the deficiency, in place of obtaining a second or further decree for deficiency based upon the referee's report of sale. With this change, there was no longer occasion for the precedent so long contained in the chancery rules. The present rules of the Supreme Court contain nothing upon the subject. The judgments now entered contain ample provision for the contingency of a deficiency. The judgment in this case provided " that if the proceeds of sale be insufficient to pay the amount so reported to be due the plaintiff, the said referee specify the amount of such deficiency in his report of sale, and that the defendant, James E. Shaw, pay the same to the plaintiff." The referee made his report of sale, specifying the deficiency just in accordance with the provision of the judgment. There is, under such a judgment, no further occasion for the intervention of the court, except, perhaps, to see that the referee has correctly performed the process of subtracting one sum from another, any more than when a sheriff has sold property under an ordinary money-judgment and made return of the amount made by the sale, and subsequently another execution is issued to recover the balance of the judgment. Indeed the sheriff may as well be, and outside of the cities is generally, appointed by the court to sell the mortgaged premises. Whether done by referee or sheriff, the duty is the same, and is purely ministerial in the execution of the judgment. (*People ex rel. Day* v. *Bergen*, 53 N. Y., 404.) Hence the referee to sell mortgaged premises and to report deficiency has no judicial or other duties than a sheriff appointed to make the sale, and is not embraced in the class of referees provided for in rule thirty; and the machinery specified in that rule, in relation to filing exceptions to, and confirming his report, has no application to the class of cases under consideration.

This entire proceeding, from the time of the entry of the judgment of foreclosure and sale and for deficiency, is simply an execution of that judgment. The judgment in this case, as we have seen, provided for all contingencies, and was final in character and effect. (*Morris* v. *Morange*, 38 N. Y., 172.) If the report in this case, so far as the judgment for deficiency and issuing execu-

tion to collect it, did not require confirmation, then it follows that no notice of filing was required to be given, and no rule of delay of eight days after filing, and before issuing execution, apply to this case. The defendant was not entitled to notice of the steps in execution of the judgment, and the notice to the clerk to enter judgment for deficiency was an idle ceremony, and any entry of such a judgment, if it was made, was as unauthorized as unnecessary.

I am not unaware that the above conclusions may seem not in harmony with some reported cases, where, in the consideration of some other question than the one involved here, the court has assumed rather than decided that rule thirtieth is applicable to this class of references. The question we have been discussing relates simply to the mode of executing the judgment, and the necessity of notices to the defendants of the progress of its execution. It may well be that for the purpose of giving a deed to the purchaser, and perfecting the title as between mortgagee and purchaser, that confirmation of the referee's report is proper or necessary; but with that question we are not now concerned. We are simply to consider the right of the defendant in the judgment. But suppose the views above presented are wrong, and that the regular practice required notice to the defendant of the filing of the referee's report, and the confirmation of the referee's report of sale, and a judgment for the deficiency, and that defendant had but six days' notice of the filing of the referee's report, and that judgment for deficiency was entered in six instead of eight days after filing report, and that there is no formal order of confirmation. They are but irregularities, and are supplied and cured by subdivision 12 of section 721 of the Code of Civil Procedure, unless the adverse party, the appellant, has been prejudiced.

There is nothing in appellant's case to show that he has been prejudiced. The moving affidavits do not show that any execution has been issued, or that appellant had any personal property liable to be seized upon the execution, if one were to be issued, or any real estate to be affected by the lien of the judgment. Besides, the appellant has been guilty of inexcusable delay in moving to set aside these proceedings.

The moving affidavits are significantly silent as to when these

irregularities were discovered, and it is shown by the opposing affidavits that the appellant must have been aware of them as early as the 6th January, 1877, and the motion was not made till the 1st Monday of December, 1877.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

INGALLS, P. J., concurred.

Present — INGALLS, P. J., and POTTER, J.

Order affirmed, with ten dollars costs and disbursements.